# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**APRUZZESE, McDERMOTT,**
  **MASTRO & MURPHY, P.C.**
Arthur R. Thibault, Jr., Esq. (Attorney # 023631998)
Kyle J. Trent, Esq. (Attorney # 033662011)
25 Independence Boulevard
Warren, New Jersey 07059
TEL:   (908) 580-1776
FAX:   908-647-1492
athibault@ammm.com
ktrent@ammm.com
Attorneys for Defendants
Town of Dover & Dover Police Department

| | |
|---|---|
| ANTHONY LIGUORI,<br><br>                Plaintiff,<br><br>v.<br><br>TOWN OF DOVER; DOVER POLICE DEPARTMENT; and JOHN DOES 1-10; and ABC ENTITIES 1-10, fictitious names for persons or entities whose present roles and identities are unknown ,<br><br>                Defendants. | *Civil Action No.:* _____<br>State Court Docket No.  MSR-L-001894-23<br><br><br>       **NOTICE OF REMOVAL**<br>       (Electronically Filed) |

**TO:**   CHIEF JUDGE AND JUDGES OF THE
        UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF NEW JERSEY

**ON NOTICE TO:**

        Clerk, Law Division
        Superior Court of New Jersey
        Morris County Court House
        Washington and Court Streets
        Morristown, New Jersey 07960-0910
        (via electronic filing)

1

Jonathan Meyers, Esq.
Meyers Employment Law LLC
13 ½ James Street
Morristown, NJ 07960
Attorneys for Plaintiff
(via electronic filing and Federal Express)

**HONORABLE JUDGES:**

Defendants Town of Dover and Dover Police Department (hereinafter referred to collectively as "Defendants") notice the removal of this action pursuant to 28 U.S.C. §1441 to the United States District Court for the District of New Jersey, on the following grounds:

<u>**TIMELINESS OF REMOVAL**</u>

1.  On or about October 26, 2023, Plaintiff Anthony Liguori ("Plaintiff") commenced a civil action against the above-named Defendants in the Superior Court of New Jersey, Morris County, Law Division, under Docket No. MRS-L-001894-23. A true copy of the Complaint is attached hereto as Exhibit A. To Defendants' knowledge, the Complaint is the only process or pleading filed or served by any party.

2.  Defendants first received notice of the civil action on or about October 30, 2023, when they were served with a copy of the Summons and Complaint.

3.  Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within thirty (30) days after first notice to Defendants of the civil action.

<u>**BASIS FOR REMOVAL**</u>

4.  This cause is a civil action within the meaning of the Acts of Congress relating to removal of causes.

5. In Count Three of the Complaint, Plaintiff alleges that Defendants violated federal law, namely 42 U.S.C. § 1983 by allegedly depriving him of rights under the First and Fourteenth Amendments to the United States Constitution.

6. The Complaint also includes state law claims for alleged violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

7. The above-described action is a civil action of which this Court has original jurisdiction under the provisions of Title 28, United States Code, Section 1331 (Federal question), in that Plaintiff asserts a civil action based on a claim or right "arising under the Constitution, laws, or treaties of the United States."

8. Because the United States District Court has original jurisdiction over Plaintiff's claims, this case is subject to timely removal under 28 U.S.C. § 1441 and 1446.

9. The pendent state law claims arise from a common nucleus of operative facts which may be removed to the United States District Court pursuant to 28 U.S.C. § 1441(c).

10. There are no other named Defendants.

11. Defendants have not previously sought similar relief.

## CONSENT TO REMOVAL

12. All named Defendants consent to this removal.

## NOTICE / SERVICE

13. Pursuant to 28 U.S.C. § 1446, copies of this Notice of Removal have been served, via electronic filing through the Superior Court of New Jersey, upon Plaintiff's counsel and upon the Clerk of the Law Division of the Superior Court, Morris County, New Jersey through electronic filing.

**WHEREFORE**, Defendants Town of Dover and  Dover Police Department respectfully request that this Honorable Court take jurisdiction of this action and issue all necessary orders and

process to remove said action from the Superior Court of New Jersey, Morris County to the United

States District Court for the District of New Jersey.

                                          Respectfully submitted,

                                          APRUZZESE, McDERMOTT,
                                          MASTRO & MURPHY, P.C.
                                          Attorneys for Defendants


                                          By: /s/ *Kyle Trent*_____
Dated:  November 9, 2023                      Kyle J. Trent

4

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I, Kyle J. Trent, Esq., counsel for Defendants certify that to the best of my knowledge the claims in the matter in controversy are not currently the subject of any other judicial or administrative proceedings besides the captioned New Jersey Superior Court action.

APRUZZESE, McDERMOTT,
MASTRO & MURPHY, P.C.
Attorneys for Defendants

By: /s/ *Kyle Trent*_____
Kyle J. Trent

Dated:  November 9, 2023

5

## CERTIFICATION OF SERVICE

I hereby certify that I caused to be served copies of this Notice of Removal on November 9, 2023, as follows:

TO:   Clerk, Law Division
      Superior Court of New Jersey
      Morris County Court House
      Washington and Court Streets
      Morristown, New Jersey 07960-0910
      (via electronic filing)

      Jonathan Meyers, Esq.
      Meyers Employment Law LLC
      13 ½ James Street
      Morristown, NJ 07960
      Attorneys for Plaintiff
      (via electronic filing  and Federal Express)

                                    APRUZZESE, McDERMOTT,
                                    MASTRO & MURPHY, P.C.
                                    Attorneys for Defendants


                                    By: /s/ *Kyle Trent*_____
Dated:  November 9, 2023               Kyle J. Trent

6

**EXHIBIT A**

**SUPERIOR COURT COMPLAINT**

**MEYERS EMPLOYMENT LAW LLC**
Jonathan Meyers, Esq., Attorney No. 019061999
13 ½ James Street
Morristown, NJ 07960
Phone (973) 453-4847
Fax: (973) 536-0120
E-mail: EmploymentLawyer@Lawyer.com
*Attorneys for Plaintiff Anthony Liguori*

---

| | |
|---|---|
| ANTHONY LIGUORI, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: MORRIS COUNTY |
| Plaintiff, | |
| | Docket No. MRS-L-        -23 |
| vs. | |
| | |
| TOWN OF DOVER; DOVER POLICE DEPARTMENT; and JOHN DOES 1-10; and ABC ENTITES 1-10, fictitious names for persons or entities whose present roles and identities are unknown, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

---

Plaintiff, Anthony Liguori, of full age, and presently residing in the County of Passaic, and the State of New Jersey, by way of this Complaint against the Defendants, states:

## THE PARTIES

1.   Plaintiff Anthony Liguori ("Plaintiff" or "Officer Liguori") is an individual who lives in New Jersey, in the County of Passaic.

2. At all relevant times, Plaintiff worked for the Defendants, as a Law Enforcement Officer ("LEO"), holding various ranks, starting in or about  2014 until early 2023, when he was forced out of his job through being constructively discharged.

- 1 -

3. At all times relevant to this lawsuit, Plaintiff Liguori primarily worked out of the Defendants' Police Department facility located at 37 North Sussex Street, Dover, New Jersey, 07801.

4. Upon information and belief, the Town of Dover (the "Town") is a domestic government entity with offices located at 37 North Sussex Street, Dover, New Jersey, 07801.

5. Upon information and belief, the Dover Police Department (the "Department") is a department within the Town of Dover with offices located at 37 North Sussex Street, Dover, New Jersey, 07801.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff re-alleges and incorporates the allegations set forth in the paragraphs above.

### A.      Officer Liguori Served at a Level that Met Town's Expectations

7. Between 2014 and early 2023, Officer Liguori worked for the Department and served honorably.  He performed at a level that met or exceeded the Department's expectations and earned positive feedback on his performance throughout his employment.   By the time of his constructive discharge, he had achieved the rank of Sergeant.

8. However, as a result of the 2019 local election, there was a change in Town leadership.

9. This resulted in Dover employees (including members of the Department) who were viewed to have been aligned with the former mayor, to become the objects of the new administration's animus.  This resulted in a number of Town and Department employees being forced out of their jobs.  It also spawned a backlash of complaints and litigation. See *e.g., Amin v. Dover*, 1:20-cv-16595 (D.N.J.)

- 2 -

10. At that time, there was generally known to be what was referred to as a "hit list" of Town employees who were considered to be associated with the former Mayor. Indeed, at that time, nearly 40 such targeted employees were fired or forced out of their jobs.

11. Since the 2019 election, Officer Liguori – who was perceived to have been aligned with the formal mayoral administration – fell out of favor with both the Town's and the Department's leadership.

12. Ever since the change in leadership, Officer Liguori – like others – felt that his employment was on shaky ground and that the new decision-makers would seize any opportunity – no matter how unjustified – to push him out of his job.

13. In early 2023, the Department seized on just such an opportunity when it was presented.

**B.** **Officer Liguori Was Constructively Discharged after Being Outed as Gay**

14. Officer Liguori is gay, but he had not publicly or professionally disclosed that fact – which was his prerogative. Such a disclosures should have been a choice left up to him.

15. Police culture generally is infused with machismo and is not predisposed towards gay officers.

16. That kind of outlook was markedly apparent in the Dover Police Department.

17. For example, former Officer Sharon Whtimore's sexual orientation-based discrimination claims against Dover are nationally known. See, *e.g.* :

https://escholarship.org/content/qt9t40q6gp/qt9t40q6gp.pdf?t=lnrdg8

18. Additionally, during the time period of approximately 2016 to 2018 a Department LEO (who ultimately became a Lieutenant) apparently suspected the truth about Officer Liguori's sexual orientation and called him a "fucking faggot." (This was not done in jest, but rather, was a genuinely mean spirited expression of animus).

- 3 -

19. Furthermore, on other occasions in the past, a fellow officer made anti-gay and racist slurs in front of a superior Officer. The Superior Officer did nothing to stop it – instead, he laughed. That superior Officer was eventually elevated to the rank of Chief.

20. Given this backdrop of anti-gay hostility, Officer Liguori chose to keep his sexual orientation private.

21. However, things changed dramatically in 2021.

22. At that time, Officer Liguori engaged in a consensual sexual interaction with a fellow officer. This occurred in a private home, during what was a break time for Liguori and a night off for the other officer.

23. Subsequently (in or about Summer 2022), this occurrence was disclosed to the Department's leadership and Officer Liguori was outed.

24. Not long thereafter, Officer Liguori's fears were realized and the Department reacted to this revelation by discriminating against him.

25. Other officers began to mistreat Officer Liguori and hurl slurs at him, like "faggot" and the like. Notably, the PBA Union Delegate – who worked on the same shift as Officer Liguori – demanded that Liguori be put on leave because the "men" were uncomfortable with his sexuality.

26. Moreover, when information about Officer Liguori's sexual orientation began to circulate around the Department, other officers distanced themselves from him and stopped talking to him.

27. Officer Liguori could feel the palpable tension from his co-workers who stopped talking to him and acted liked they did not want to engage him in conversation anymore. He felt completely isolated.

28. The Chief of Police tried to avoid Officer Liguori.  On the occasions where the Chief did run into Officer Liguori, the Chief changed his expression to have a disgusted look on his face.

29. Officer Liguori was effectively frozen out and ostracized with the leadership's imprimatur.

30. And beyond that, the disclosure of Officer Liguori's sexuality was leaked outside the Department.

31. Officer Liguori began receiving calls from law enforcement friends and colleagues, in multiple counties, asking him if he was gay.  This was uncomfortable for Officer Liguori and made him apprehensive to pick up the phone.

32. Department leadership turned a blind eye to all this.

33. Even worse, the Department twisted the facts of this event to further embarrass Officer Liguori and force him out.

34. In addition, the Department inexplicably required Officer Liguori to submit to a drug test (which, of course, he passed).  There was no legitimate reason for this.  It was just an additional attempt at humiliation.

35. More specifically, the Department characterized his romantic experience as a disciplinary infraction and issued an ultimatum to him to voluntarily separate from his employment or be fired after enduring a humiliating disciplinary process.

36. As part of this "disciplinary" process, a Department Internal Affairs ("IA") Lieutenant placed inordinate focus and attention on questioning Officer Liguori about details of his romantic life.  The questions were gratuitous and clearly intended to embarrass Officer Liguori.  Moreover, the questioning was done with other staff watching live via videofeed and being

- 5 -

recorded.  After that, details of what Officer Liguori said were leaked in an effort to embarrass him.

37. Notably, this IA officer is the same person who had previously called Officer Liguori a "fucking faggot" (as described in paragraph 17, above).

38. During this process, the aforementioned Lieutenant threatened Officer Liguori by telling Liguori that if the allegations of a same-sex relationship were true, then the Chief of Police is going to want Liguori to resign right now.  The Lieutenant flat-out told Liguori that, he needed to resign or be fired.

39.  The disciplinary process had a pre-determined outcome given that the decision-makers were the same people who wanted to fire him since learning of his sexual orientation.

40. Indeed, at that time in 2022, the Chief of Police was the same person who had previously laughed at anti-gay and racist slurs (as described in paragraph 18, above) – so the Chief's discriminatory animus was obvious.

41. Additionally, the Department's IA has a history of selective prosecution.  The infractions of favored officers are overlooked, while disfavored officers can receive severe consequences in the face of minor or baseless accusations.

42. And the Lieutenant further enticed Officer Liguori to resign by telling Liguori that, if he did resign, the Department would not bring departmental charges against him and wipe the slate clean of disciplinary allegations.

43. This scenario meets the legal criteria for constituting a constructive discharge.  See, *e.g., Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh Pa.*, 903 F.2d 243, 249 (3d Cir. 1990).

44. Given the Hobson's choice presented to Officer Liguori, he separated from his employment by retiring – because he had no realistic alternative.

### C. Plaintiff Was Treated Less Well Than Comparators

45. Similarly-situated comparators among Dover LEOs who are heterosexual, who have engaged in objectively serious misconduct, have been protected and not subjected to the kinds of adverse employment actions visited upon Officer Liguori.

### D. Defendants Continued to Harm Plaintiff after Forcing Him Out

46. Pushing Officer Liguori out of his job was not enough for the Defendants.

47. First, they opposed his application for unemployment benefits.

48. As a result Plaintiff Liguori was denied certain monetary benefits.

49. Furthermore, the Department failed to certify Plaintiff's retirement paperwork that Plaintiff had submitted to the State.

50. Next, Defendants interfered with Officer Liguori's application for a retired LEO handgun permit. (This kind of permit is necessary for a retired LEO to gain lucrative employment in private security).

51. The Department's Chief of Police refused to endorse Plaintiff's permit application. Additionally, the Department provided false and misleading information to the State Police (which is the entity that decides whether to issue such permits).

52. As a result, Plaintiff has been unable to obtain a good-paying private security job.

53. Additionally, during the time of the 2023 Dover primary – in which the mayor's position was hotly contested – an online social media posting was made that was aimed at humiliating Plaintiff by making fun of his sexual orientation. The posting was apparently made by supporters of the Mayor who was in place in 2023 (when the aforementioned events that pushed

- 7 -

Plaintiff out of the Department occurred). Also, of note, is that the old Mayor – whom Plaintiff was associated with – was running in the primary against the Mayor who was in place in 2023. Consequently, this social media posting was discriminatory toward Plaintiff based on his sexual orientation and was also grounded in an effort to penalize Plaintiff for his actual and/or perceived association with the old Mayor's faction.

**E.    Plaintiff Has Suffered Harm**

54.    Plaintiff had suffered harmed by Defendants including but not limited to: loss of income due to his unlawful constructive discharge, loss of benefits and other emoluments of employment.

55.    Moreover, after Defendants fired Officer Liguori, their discriminatory animus continued.

56.    In addition, Plaintiff has suffered severe emotional distress as a result of the harassment she was forced to endure, and as a result of her unlawful termination.

57.    Also, Plaintiff has suffered economic harm in the form of unpaid wages and overtime.

**COUNT ONE**
**(NJLAD Hostile Work Environment)**

56.    Plaintiff re-alleges and incorporates the allegations set forth in the paragraphs above.

57.    The Defendants' afore-described conduct constitutes hostile work environment harassment based on sexual orientation within the meaning of the NJLAD.

58.    The harassment inflicted upon Plaintiff was unwelcome, severe and pervasive.

59.    The Department's supervisors (who managed and supervised Plaintiff and his co-workers) initiated, participated in, perpetuated and condoned the harassment.

- 8 -

60.   As a result of Defendants' unlawful actions, Plaintiff has suffered interference with his work and employment, loss of employment, as well as loss of wages, benefits, advancements in seniority, and other emoluments of employment.

61.   In addition, Plaintiff has suffered emotional distress.

62.   Defendants' unlawful conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and, moreover, involved the participation of upper management, thus warranting the imposition of punitive damages.

## COUNT TWO
### (NJLAD Discrimination Disparate Treatment)

63.   Plaintiff re-alleges and incorporates the allegations set forth in the paragraphs above.

64.   Plaintiff, being gay, was a member of a legally protected class under the NJLAD.

65.   Plaintiff was subjected to adverse employment actions because of his sexual orientation, including being ostracized at work, being set up for baseless discipline, being constructively discharged and by virtue of Defendants' interference with his unemployment and application for a retired LEO gun permit.

66.   Plaintiff was subjected to these adverse employment actions because of his sexual orientation.  This is not something that would have been done to a similarly-situated straight employee.  Thus, Plaintiff's sexual orientation played a role in Defendants' decisions to impose adverse employment actions upon Plaintiff.

67.   As a result of Defendants' unlawful actions, Plaintiff has suffered interference with his work and employment, loss of employment, as well as loss of wages, benefits, advancements in seniority, and other emoluments of employment.

68.   In addition, Plaintiff has suffered emotional distress.

- 9 -

69.     Defendants' unlawful conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and, moreover, involved the participation of upper management, thus warranting the imposition of punitive damages.

## COUNT THREE
### (42 U.S.C. § 1983)

70.     Plaintiff re-alleges and incorporates the allegations set forth in the paragraphs above.

71.     Plaintiff engaged in protected speech and association and was also perceived as being associated with the faction supporting the old Mayor, which was in opposition to the faction supporting the Mayor who was in place in 2023.

65.     Defendants violated the 42 U.S.C. § 1983 by, acting under color of law, they deprived Plaintiff of the privileges and immunities secured to him by the First and Fourteenth Amendments to the United States Constitution and, in particular, his right to hold employment without infringement of his First Amendment right to freedom of speech and association.

66.     Defendants willfully and recklessly took adverse employment actions against Plaintiff in order to deny Plaintiff his First Amendment right to free speech and association.

67.     Defendants' actions were aimed at penalizing and retaliating against Plaintiff for his exercise of his fundamental First Amendment right of speech and association.

## COUNT FOUR
### (Fictitious Party Allegations)

68.     Plaintiff re-alleges and incorporates the allegations set forth above.

69.     Defendants John Does 1-10 and ABC Entities 1-10 are fictitious individuals, entities, or anyone else who participated in and/or benefited from the aforementioned unlawful conduct.

- 10 -

70.    As a direct and proximate result of the unlawful actions of Defendants John Does 1-10 and ABC Entities 1-10, said names being fictitious, Plaintiff was caused to suffer damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for the following:

a.    compensatory damages including economic damages and emotional distress,

b.    pre-judgment and post-judgment interest;

c.    attorneys' fees and costs;

d.    punitive damages;

f.    reinstatement; and

g.    such other and further relief as the Court finds just and proper.

**MEYERS EMPLOYMENT LAW LLC**
Attorneys for Plaintiff

By:_____
Jonathan Meyers, Esq.

October 26, 2023

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury on all counts in this Complaint.

**MEYERS EMPLOYMENT LAW LLC**
Attorneys for Plaintiff

By:_____
Jonathan Meyers, Esq.

October 26, 2023

- 11 -

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c) and R. 4:25-4, Defendants designate Jonathan Meyers, Esq., as trial counsel in the within matter.

**MEYERS EMPLOYMENT LAW LLC**
Attorneys for Plaintiff

By:_____
              Jonathan Meyers, Esq.

October 26, 2023

## RULE 4:5-1 CERTIFICATION

I hereby certify that, to the best of my knowledge, there is no other action regarding the subject matter of the forgoing action pending in any court or arbitration proceeding, nor is there any such action or proceeding contemplated, and that no other parties should be joined in this action.

**MEYERS EMPLOYMENT LAW LLC**
Attorneys for Plaintiff

By:_____
              Jonathan Meyers, Esq.

October 26, 2023

## RULE 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

**MEYERS EMPLOYMENT LAW LLC**
Attorneys for Plaintiff

October 26, 2023

By:_____
                Jonathan Meyers, Esq.

- 13 -